BERNARD RODDY and LOUIS F. MEINSER, trustees,

*v.*

RILEY A. BRICK et al.

Machinery bought by a mortgagor, after he had given complainants their mortgage on his foundry, and attached thereto and used by him in manufacturing, with the knowledge of the vendor of such machinery, was held to be fixtures and covered by the mortgage, although such vendor took a bill of sale thereof with a condition that if the notes given for the price of the machinery should not be paid, the sale should be void, and the machinery revert to him, the acts of the vendor showing that he considered the bill of sale as merely a chattel mortgage, and the premises, including the machinery, being afterwards conveyed to him by the mortgagor. A planer, a hoisting block and chain, two iron lathes, and a drill-press were held, under the circumstances, to be chattels, and not embraced in the mortgage.

*Mr. A. V. Schenck*, for complainant.

*Mr. J. D. Bedle*, for defendant Campbell.

*Mr. W. P. Wilson*, for defendant.

BIRD, V. C.

This bill is filed to foreclose a mortgage bearing date the 17th of May, 1880, and recorded on the 17th day of June, in the same year, in the county wherein the mortgaged premises are situated.

This mortgage was given by Riley A. Brick and wife to the complainants, as trustees, to secure the payment of one hundred bonds, given by the said Brick, payable in five years, with interest semi-annually, on the 1st days of January and July, on condition that if default should be made in the payment of any interest, or any part thereof, on the day when the same was payable, and should remain unpaid for the space of thirty days, then the principal of said bonds should become due. The property covered by the mortgage is first described as follows: " All that certain lot or parcel of ground, with the buildings and improvements thereon erected, situate " &c., with a more particular description by courses and distances, containing four acres and a half. It makes no mention of the property which is in dispute, which the complainant claims is part of the real estate, as being fixtures, and which the defendant Campbell claims is personal property.

The bill alleges that at the time of the execution and delivery of the said mortgage the said premises were designed for and used as an iron foundry for the casting and making of water pipe and gas pipe, and that there were, at that time, machinery and fixtures of a permanent nature used in the said business and attached to the realty, and intended to be and actually included in the said mortgage, and, as such, did pass as a part of the real estate to the complainants. The articles claimed by the complainants are—

"One large steam crane, one jack, one steam-engine and boiler, one large lathe, one small lathe, one planer, one drill-press, one drill upright, one Mackenzie blower, two small pumps; in machine-shop—shafting, belting &c, one large truck scale, (for weighing cars and contents), one wire rope and drum, one jig-saw and stand; in blacksmith shop—one pair of bellows, two anvils, one large anvil, railroad track and switch at foundry; in machine-shop—one iron hoisting-block and chain, one wood hoisting-block and rope, one wood hoisting-block and small."

The bill states that the whole number of bonds, that is, one hundred, was issued, and that many of them are held entirely by persons unknown, and that no interest has been paid since

January 1st, 1884, and that therefore the whole amount of principal and interest has become due.

The bill also shows that on the 29th day of May, 1880, the said Brick and wife made and delivered to the defendant Campbell a mortgage upon the same premises to secure the sum of $10,000.

The bill also shows that on the 24th day of June, 1882, the said Brick conveyed all the said mortgaged premises to the said Campbell; and also that, on the 29th day of May, 1880, the said Brick executed a bill of sale to the said Campbell for said articles and many others, which was filed in the clerk's office on the 16th of August, 1880, and also a certain other bill of sale, dated January 5th, 1882, which was recorded on January 6th, 1882, and also recorded on December 22d, 1882, and on the 18th of December, 1883, which were given to the said Campbell by the said Brick, to complete the sale and transfer of the chattels therein mentioned by said Campbell to said Brick, each one containing a distinct proviso that in case default be made by said Brick in the payment of four several notes, given in consideration of said sales, or any part thereof, then said sale should be void and the said chattels should *revert* to Campbell, and it should be lawful for him to take possession of them.

As intimated, the articles above enumerated are all named in this bill of sale. Campbell claims two cranes (one steam and one jack), one engine and boiler and one blower, by virtue of the proviso in said bill of sale, insisting that the title did not pass thereby, and could not, in law, until all the consideration-money was paid; whereas the complainants claim that they have all been attached to the realty, and are fixtures, and that the taking of a chattel mortgage or treating the bill of sale as a chattel mortgage, estops Campbell from claiming under the bill of sale.

First. Did the title pass, and was the instrument called a bill of sale intended to be used as a mortgage to secure the payment of the purchase-money only? I think it was intended to be used as a mortgage only. It is true the language used, which is, in case of default, " this conveyance to be void, of no effect, and

Roddy v. Brick.

the possession of the goods herein described shall revert to the said party of the first part," is very clear and emphatic; yet a copy of this bill of sale Campbell had recorded in 1882, after having it acknowledged both by himself and Brick, and after making thereon an affidavit by himself, in which he declares himself to be "the mortgagee in the within-described chattel mortgage." This must be taken to show what the parties intended. Campbell called it a mortgage when giving it character under oath. I cannot see how the court can now give the instrument any other name. And if there be any doubt, the law prefers treating such instruments as securities. Mr. Justice Story, in *Flagg* v. *Mann, 2 Sumn. 486–533*, so declares—I quote: "It has been said that the true test whether a conveyance is a mortgage or not, is to ascertain whether it is a security for the payment of any money or not, whether it is a security for the performance or non-performance of any act or thing. If the transaction resolves itself into a security, whatever be its form, it is, in equity, a mortgage. If it be not a security, then it may be an absolute sale or a conditional purchase." "Again, it is well known that courts of equity lean against construing contracts to be conditional sales; and therefore, unless the construction be clearly made out to be of that nature, it is always construed to be a mortgage. So Lord Hardwicke laid down the doctrine in *Longuet* v. *Scawen, 1 Ves. Sr. 402, 406*, and it has never been departed from. The *onus probandi*, then, is on the defendants to establish it to be a conditional sale. If it be doubtful, then it must be construed to be a mortgage." *Id. 535.* And this view of the law is not at all in conflict with the case of *Cole* v. *Berry, 13 Vr. 308*, where the rights of the vendor, when it is intended that possession shall pass to the vendee, but not the title to the thing agreed to be sold, are most clearly defined. The doctrine which is involved in the present case is discussed in *Jones on Chat. Mortg.* §§ *26–32.* In section 30 he declares the law to be the same as laid down by Mr. Justice Story in *Flagg* v. *Mann, supra,* but I believe he does not notice this case in his treatise.

If the parties had stood by the original bill of sale, with the

distinct agreement that the. title should not pass until all. the the consideration-money was paid, no question could fairly have been raised, as to the articles included therein and now in this foundry, whether, independently of this question, they be considered fixtures or not. Attaching them to the freehold, however securely, would deprive the true owner of them. See *Ewell on Fixtures 54.*

But having come to the conclusion that the parties intended to treat this property as a security for debt, and that Campbell is to be regarded as a mortgagee, I must inquire, secondly, whether the articles above named, or any of them, are fixtures or not. In view of the apparent uncertainty of the law on the subject, the question before me is quite embarrassing. However, let me take the facts, and apply the law as I understand it. Brick was desirous of establishing the foundry business to make water and gas pipe. For this purpose, he bought the land covered by the mortgage, and to carry it on issued the bonds secured thereby, and from time to time raised money on them. Campbell was the owner of a large stock of machinery, valued at $30,000, which he sold to Brick for that sum. This is the same machinery named in the bill of sale. At the time of the sale, it was all located in Campbell's shop, at Bricksburg, in a distant county. Several of the articles named in the bill of sale (including two cranes, one engine and boiler, and one blower) were transferred to the foundry built by Brick. The evidence leaves no doubt but that they were purchased for that purpose, and that Campbell so understood it. I think the case shows that Campbell also knew what Brick intended to manufacture, and what use he intended to make of the machinery which he had bought. The building erected for the reception of the machinery was a mere shell, consisting of posts, joists, rafters, roofing and clap-boards. The land on which it stands is said to be of no value for any other purpose. At the time of the execution of the mortgage, the building was not complete, nor was any of the machinery on the premises until about one month after it was completed. What Brick has done with all the other articles included in the bill of sale does not distinctly appear. It does

Roddy v. Brick.

not appear whether Campbell can realize his claim from them or not.

The different articles are connected with the building as now shown : The cranes have in each end a three-inch iron pin. This pin rests in a socket in a large iron plate, both below and above. The plate below rests on brick-work let into the ground, and is made secure by iron bolts running up through the brick-work and plate, and by screws. The plate above is fastened to the joists or girders of the building by bolts and nuts. In this position, the cranes are used in manufacturing and moving the pipe. It seems that they, or similar ones, are absolutely neces-sary in conducting the business. The steam-engine rests upon a brick foundation let into the ground about two feet in width by twelve-in length, and carried above the ground three feet. It is held in its position by bolts running through the brick-work and the bed-plate of the engine, and by nuts screwed on top. This engine supplies steam to two boilers and the power by which the entire business is carried on. The power is applied by means of shafting and belting. The shafting is all connected with the building by means of hangers, in the manner every-where seen, I think. The steam boilers are secured in the same manner that the engine is, but they are more securely bricked in. The McKenzie blower, a large iron box with a fan in it to create blast to melt the iron, is fastened to timbers imbedded in the ground, by bolts, and is connected with the shafting by belt-ing, and so put in motion. The large planer sits on timbers, and is kept in position by its own weight. The hoisting-block and chain, used for raising material to a given height, and weighing about a ton and a half, is placed in position for use by means of a large hook and eye, the eye being fastened into the building above. The hook can be readily lifted from the eye. The turning-lathes sit on timbers, and are not otherwise fastened to the building. One of them is about fourteen feet long ; and both are operated by belting and shafting. Their own weight keeps them in position. The drill-press is supported in place by its own weight, and is operated as are the lathes. The rope machines are quite certainly connected with the building. The

railroad track and switch are iron rails and bars fastened to cross-ties, which are imbedded in the ground. The weighing-scales are set on a foundation built in the ground, and are fastened to the foundation by bolts. The bellows are used with the forge, and the forge is of brick and mortar carried above the ground about eighteen inches. The pump is fastened to a bed-plate of wood, as a witness says, "in a hole in the ground, covered with boards, and there is a bed-plate at the bottom, and the pump is made fast to it." The anvils are fastened by spikes to large blocks of wood, which are let into the ground.

It is urged that each of the machines named is essential to the successful management of the concern. This I concur in. But that alone does not settle the question between mortgagor and mortgagee, nor between the mortgagee and judgment creditors, nor between the mortgagee and the grantee of the mortgagor. If Campbell cannot hold any of these articles, should they be held not to be fixtures because his alleged chattel mortgage is not a lawful lien, he may still claim them as such grantee. Again, it is said that the intention of the party in the construction of a building and in placing machinery therein is a safe criterion. This principle is often invoked, but it is not always controlling. There is no doubt but Brick purchased every machine and placed it in his foundry, with the view of using it there, just as he did the building itself or the land, in the manufacture of pipe. But the cases all show that notwithstanding this, many machines, large and small, heavy as well as light, placed in buildings erected expressly for them, or similar ones, cannot be held by the mortgagee. It is only necessary to refer to the case of *Penn Mutual Insurance Co.* v. *Semple, 11 Stew. Eq. 575*, decided by the court of errors, and the cases referred to in the opinion of Justice Knapp.

Nor does the fact that a machine may be removed without injury to itself or the building, determine its character to be a chattel or not a fixture. For illustration, take the engine used in this foundry; I suppose it can be taken from its foundation by unscrewing the nuts, and carried away without doing any special damage to the freehold; yet it has been the judgment of all

Roddy *v.* Brick.

courts that when engines and boilers are annexed to the freehold, as these are, by bolts and screws imbedded in masonry, they are to be considered fixtures. This principle applies with equal certainty and force to the cranes in dispute, in the case before me. I am impressed with another fact in connection with the cranes, that is, that as to the large ones at least, the building must have been constructed with reference to them, for they reach from the ground floor or mason-work on which they rest to the joists or girders which support the roof, about forty feet above, and which, one witness says, were so placed and arranged as to receive and hold the cranes.

My conclusion is that the articles named are fixtures, excepting the planer, the hoisting-block and chain, the lathes and the drill-press. Counsel for complainants regarded these four chattels as fixtures, and relied upon *Galveston R. R.* v. *Cowdrey, 11 Wall. 459, 482 ;* but, quite clearly, there is no strong analogy here. It seems to me that I cannot aim at anything like harmony or consistency in the law on this perplexing subject, without placing the four articles last named in the list of chattels rather than fixtures.

Nor is the view above expressed as to the articles regarded as fixtures at all in conflict with *Early* v. *Burtis, 13 Stew. Eq. 501.* In that case, the facts were that the steam boiler was taken out of the building for repair, and was moved from place to place in the building, and rested on a brick foundation, without bolts or any other attachment to the soil.

It would seem that when a building is erected for a particular purpose, and machinery is placed therein to effectuate that purpose, and is reasonably necessary therefor, and is in some substantial manner attached to the land or the building, and consequently to the freehold, so as to give one the idea of permanency, and to evince an intention of making a fixture of it, the courts incline to regard such machinery as part of the realty, irrespective of weight or size, unless the size be such that the machine cannot be removed without removing or damaging the building.

I will advise accordingly.

The decree will direct a sale, and if money enough is raised

to discharge all of the bonds and complainant's costs, then all the outstanding bonds and such costs will be paid, except the twenty-three which are claimed by Mrs. Brick, and the amount due or claimed to be due on those will be paid into court to await the further order of the court. If money enough to pay all be not raised by a sale, then an equal proportion will be paid on the former, and the balance paid into court, there to remain until such further order.